UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMMY CAVALIERI,

           Plaintiff,

    v.                                            **DECISION AND ORDER**
                                                           17-CV-812S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

      1.      Plaintiff Tammy Cavalieri brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed applications for DIB and SSI with the Social Security Administration ("SSA") on August 29, 2003. (R.[1] at 53-56). Plaintiff alleged disability since June 23, 2003 due to antiphospholipid syndrome, pulmonary embolism, and hypothyroidism. (R. at 69). Plaintiff's applications were initially denied (R. at 34, 634), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 43).

      3.      On July 21, 2006, ALJ William Vest held a hearing at which Plaintiff— represented by counsel— and Vocational Expert ("VE") Peter Manzi appeared and testified. (R. at 1083-1106). ALJ Vest considered the case *de novo* and, on August 22,

___

[1] Citations to the underlying administrative record are designated as "R."

2006, issued a written decision denying Plaintiff's applications for benefits. (R. at 17-27). On October 22, 2008, the Appeals Council denied Plaintiff's request to review. (R. 7-11). Plaintiff filed civil action, and on August 10, 2009, the District Court remanded the case for further proceedings. (R. at 1161).

4. On February 4, 2010, ALJ Robert Harvey held a second hearing at which Plaintiff—represented by counsel— and Vocational Expert ("VE") Jay Steinbrenner appeared and testified. (R. at 1458-1504). ALJ Harvey considered the case *de novo* and, on February 19, 2010, issued a written decision denying Plaintiff's applications for benefits. (R. at 1118-34). The Appeals Council denied Plaintiff's request for review of ALJ's Harvey's decision on February 16, 2012. (R. at 1107-09).

5. Plaintiff again filed civil action, and on September 27, 2012, the District Court once again remanded the matter for further proceedings. (R. at 1566).

6. On February 26, 2013, the Appeals Council vacated the February 19, 2010 decision and remanded to the ALJ for further evaluation and resolution of the issues in accordance with the district court's order. (R. at 1531-34). Upon remand, the ALJ was directed to "obtain medical expert and vocational expert evidence, complete the administrative record and issue a new decision." (R. at 1936).

7. On August 14, 2013, ALJ Robert Harvey held a third administrative hearing at which Plaintiff—represented by counsel—appeared and testified. (R. at 1934-1973). Vocational Expert ("VE") David Festa and Medical Expert ("ME") Dr. Laura Rosch also appeared and testified via telephone. Id. At the time of the hearing, Plaintiff was 44 years old with a 12th grade education. (R. at 1958-59). Plaintiff had past relevant work experience as a bus monitor. (R. at 1968).

8. On September 3, 2013, ALJ Harvey issued a partially favorable decision finding Plaintiff disabled as of July 30, 2012. (R. at 1539-60). Plaintiff submitted written exceptions to the Appeals Council (R. at 1974-88), which assumed jurisdiction of the case on September 25, 2015 (R. at 1989-91). On June 13, 2017, the Appeals Council issued a corrective partially favorable decision finding Plaintiff disabled beginning April 1, 2012. (R. at 1509-11). That decision became the Commissioner's final decision, which is challenged by this current action, filed on August 17, 2017. (Docket No. 1).

9. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 18). Plaintiff filed a response on October 26, 2018 (Docket No. 19), at which time this Court took the matter under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

10. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

11. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

12. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42 (1987).

13. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as

> age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

14. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

15. ALJ Harvey analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 23, 2003. (R. at 1542). At step two, the ALJ found that Plaintiff has the following severe impairments: "morbid obesity, chronic obstructive pulmonary disease ("COPD"), degenerative arthropathy of the right knee, discogenic lumbar spine, pulmonary hypertension, metabolic syndrome (combination of steatohepatitis, hypothyroidism, diabetes mellitus, dyslipidemia, gastroparesis), hepatomegaly, splenomegaly and thoracic pain condition. Id. .

16. At step three, the ALJ found that prior to July 30, 2012, Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 1545). The ALJ also found that "[b]eginning on July 30, 2012, the severity of [Plaintiff's] impairments has medically equaled the criteria of section 3.02(A)(1) in conjunction with listings 1.04(A) and 1.02(A) of 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 1558).

17. Next, the ALJ found that prior to July 30, 2012, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with certain exceptions:

> [Plaintiff] could not work in areas with unprotected heights; could not work around heavy, moving or dangerous machinery; could not work in areas where exposed to excessive pulmonary irritants; occasional[ly] (very little to 1/3 of the time) to engage in: bending, climbing ramps or stairs, stooping, squatting, kneeling, balancing and crawling; no climbing of ropes, ladders or scaffolds; and could not work in areas where [she] would be exposed to cold and heat.

(R. at 1545).

18. At step four, the ALJ found Plaintiff has been unable to perform any past relevant work since June 23, 2003. (R. at 1557). At step five, the ALJ found that prior to July 30, 2012, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Id. Accordingly, the ALJ found that Plaintiff was not disabled prior to July 30, 2012 but became disabled on that date and has continued to be disabled through the date of the decision. (R. at 1560).

19. The Appeals Council adopted the ALJ's findings for the period from June 23, 2003 through March 31, 2012, including his determination that Plaintiff was not disabled at any time during that period. (R. at 1510). However, the Appeals Council determined that Plaintiff became disabled on April 1, 2012 and amended Plaintiff's

disability onset date accordingly.  Id.  The Appeals Council also found that since June 23, 2003, "Plaintiff has the additional severe impairment of blood disorder, antiphospholipid syndrome (APS)".  Id.

20. Plaintiff argues (1) the ALJ's RFC determination is not supported by substantial evidence; (2) the ALJ arbitrarily substituted his own judgment for that of competent medical opinion; and (3) the ALJ failed to properly evaluation Plaintiff's hand limitations.  (Docket No. 12 at 16-29).  Each argument is addressed in turn.

21. Plaintiff claims Commissioner's denial of benefits for the period prior to April 1, 2012 is not supported by substantial evidence because "[t]he frequency of Plaintiff's doctor's visits, emergency room visits, hospitalizations, diagnostic testing, and emergency room visits would have rendered her unable to perform work on a sustained basis prior to April 1, 2012" and because "Plaintiff's February 2010 testimony demonstrates […] she would not have been able to perform work for 8 hours per day, 5 days per week, or comparable schedule."  (Docket No. 12 at 17, 20).  This argument is unavailing.

22. The VE testified that in unskilled jobs, "most employers would not allow any more than one or two absences per month."  (R. at 1972).  Plaintiff points out this "equates to 5-10% of the possible workdays in a 12-month calendar year" and that:

> The evidence of record demonstrates that from the period of Plaintiff's alleged onset date of disability of June 23, 2003, through the April 1, 2012, the date the Commissioner found she became disabled, Plaintiff would have missed a total of 200 work days due to the frequency of her doctor's appointments, diagnostic testing, emergency room visits, hospitalizations, and consultative examinations.

(Docket No. 12 at 18).

23. Thus, Plaintiff calculates she "would have been absent 200 days" or "approximately 9.5% of the time." Id. at 19. According to Plaintiff's brief, this figure lies within the range of permissible absences (5-10% of the time). Id. at 19. Nevertheless, Plaintiff claims "based on the VE's testimony, Plaintiff would have been absent from substantially more work days than permitted." Id. at 20.

24. Plaintiff further parses the data to demonstrate that "from June, 2003 until July, 2006, Plaintiff would have missed a total of 101 work days due to visits [to] Kaleida Health alone." Id. at 19. Therefore, Plaintiff concludes,

> The frequency of Plaintiff's doctor's appointments, diagnostic testing, emergency room visits, hospitalizations, and consultative examinations, would have rendered her unable to perform work on a sustained basis in the competitive economy from her alleged onset date of disability, through April 1, 2012, when the Commissioner found that she became disabled.

Id.

25. Plaintiff also argues that "[t]he ALJ decision failed to consider Plaintiff's February, 2010 testimony that she has to get bloodwork done every two weeks due to side effects of her medication." Id. at 20.

26. However, Plaintiff has not demonstrated she would need to miss an entire day of work for each doctor's visit, examination, or test, or that these appointments could not have been scheduled differently. Therefore, Plaintiff's clear error argument fails. See Gregory v. Comm'r, SSA, 742 Fed. App'x 152, 156 (8th Cir. 2018) ("[T]he record is unclear why [plaintiff] would need to miss an entire day of work to have his blood tested. Given these facts, we cannot conclude that the ALJ's ruling was in error.").

27. Plaintiff also contends that the ALJ "failed to consider Plaintiff's testimony that between breakfast and dinner time, she spent 75% of the day lying down with her

8

feet elevated above her heart level," which, as Plaintiff points out, "is not one of the work postures performed in the competitive workplace." (Docket No. 12 at 20).

28. In fact, the ALJ did consider this testimony, both in the decision (R. at 1546-47) and during Plaintiff's August 14, 2013 hearing (R. at 1965). However, the ALJ found Plaintiff's statement concerning the intensity, persistence and limiting effects of these symptoms to be "not entirely credible" with respect to the period prior to April 1, 2012. (R. at 1547, 1510).

29. In 2013, Plaintiff testified that her primary care doctor said she has to elevate her legs "longer now," due to "the blood disorder, the sugar, […] everything together." (R. at 1966). However, Dr. Rosch, the independent medical expert, did not find support in the record for the proposition that Plaintiff would "need to keep [her] lower extremities elevated in some part of the day to lessen the swelling" or to "prevent further health problems." (R. at 1951-52). Dr. Rosch testified:

> Unless I see it in the record, I'm so sorry. I can't say that for [Plaintiff] this is an absolute requirement and she needs to do it. […] Unless I see any objective records as part of the treatment plan, I'm not going to make a statement about it for this particular claimant.

Id.

30. The ALJ also failed to find support in the record for Plaintiff's claims, noting "[t]here are no third[-]party statements regarding [Plaintiff's] pain and impairments." (R. at 1547).

31. "While an ALJ is required to take the claimant's complaints into account, [he] is not required to accept those complaints without question." Taillon v. Comm'r of Soc. Sec., 2019 U.S. Dist. LEXIS 53376, *12, 2019 WL 1396837 (W.D.N.Y. March 28,

2019) (citing Campbell v. Astrue, 465 Fed. Appx. 4, 6 (2d Cir. 2012) (unpublished) (internal citations omitted).

32. As the ALJ discussed, Dr. Meng's 2003 consultative examination found "minimal limitation for walking standing, and going up and down stairs" (R. at 131), "a Doppler study of the right lower extremity [on] May 20, 2004 was negative" (R. at 439), and Dr. Tracy routinely found Plaintiff to have "essentially full motor strength." (R. at 1548-50). Because the record does not support Plaintiff's claims, the ALJ's evaluation was not in error.

33. Plaintiff also argues the ALJ "arbitrarily substituted his own judgment for that of any competent medical opinion." (Docket No. 12 at 21). In support of this contention, Plaintiff claims the ALJ "failed to cite to any medical opinion to support [his] RFC finding," and failed to properly evaluate the opinions of two treating physicians. Id. at 21-23.

34. Here, the ALJ granted great weight to the medical expert opinion of Dr. Rosch. (R. at 1556). The ALJ found that "when considering [Plaintiff's] complete medical profile and history," "Dr. Rosch's testimony establishes that prior to [April 1, 2012][2], [Plaintiff] exhibited restrictions consistent with a limited range of sedentary work" in accordance with the RFC determination. Id.

35. As Plaintiff correctly points out, the ALJ granted little weight to the opinion of Plaintiff's pain management doctor, Jerry J. Tracy, III, M.D., as expressed on a functional capacity assessment form completed on July 26, 2006. (Docket No. 12 at 24). There, Dr. Tracy indicated Plaintiff could stand/walk less than 2 hours a day and could sit for 2-4 hours per day. (R. at 1047). The ALJ found this assessment inconsistent with Dr.

---

[2] amended to reflect the AC onset date determination (R. at 1510).

10

Tracy's own findings and notes from his examination of Plaintiff earlier that month. (R. at 1551). On July 18, 2006, Plaintiff reported "throwing out" her back a few days prior, which left her "moving extremely stiffly with a slow gait." (R. at 1051). Physical examination revealed a slightly antalgic gait, but no signs of acute distress, negative straight leg raises and 4-5/5 strength in the lower extremities with normal muscle tone. Id. Dr. Tracy also noted:

> [T]hroughout the exam and in conversation [Plaintiff] made facial grimacing, wincing and would take big heavy breaths when attempting to move. These manifestations seem to be disproportionate to her primary complaints. During her physical exam on palpitation she would wince and groan and gasp again in a seemingly disproportionate array of manifestations relative to the areas that I was examining.

Id.

36. Dr. Tracy's examination findings were similar in the months prior. Plaintiff presented in no acute distress with a slightly antalgic gain, negative straight leg raises and 4-5/5 strength in the lower extremities on January 19, 2006 (R. at 471-73) and again on March 16, 2006 (R. at 468-70). These records are inconsistent with Dr. Tracy's July 26, 2006 opinion, therefore this Court finds the ALJ did not err in discounting that opinion. Negron v. Colvin, 2017 U.S. Dist. LEXIS 49289, *18, 2017 WL 1194470 (E.D.N.Y. March 31, 2017) ("The Second Circuit has repeatedly held that ALJs may give a treating source's medical opinion less weight where it contradicts their own treatment notes.") (collecting cases).

37. Plaintiff also objects to the fact that the ALJ also gave little weight to the November 8, 2009 and October 19, 2010 opinions of Plaintiff's primary care doctor, Qamrunnisa Rahman, M.D. (Docket No. 12 at 23-27).

11

38. On an assessment form dated November 8, 2009, Dr. Rahman checked boxes to indicate Plaintiff is "very limited" in walking, lifting, carrying, pushing, pulling, bending, and stairs or other climbing. (R. at 1682). Dr. Rahman also indicated Plaintiff was "moderately limited" in standing, sitting, and using hands. Id. On October 19, 2010, Dr. Rahman completed another checkbox form indicating Plaintiff was "moderately limited" in walking, standing, sitting, and using her hands and "very limited" in lifting, carrying, pushing, pulling, bending, and stairs or other climbing. (R. at 1694).

39. The ALJ found Dr. Rahman's assessments were not supported by objective findings and were inconsistent with other evidence of record. (R. at 1553-54). However, Plaintiff contends "[t]he ALJ decision failed to cite to any evidence of record that conflicted with Dr. Rahman's opinions." (Docket No. 12 at 26). Plaintiff also points out that "Dr. Rahman's opinion is consistent with Dr. Tracy's July 26, 2006, opinion, which also found that Plaintiff was unable to perform work at any exertional level during the relevant period." Id.

40. Contrary to Plaintiff's claims, the ALJ did cite evidence of record that conflicted with Dr. Rahman's 2009 and 2010 assessments. The ALJ noted that on May 19, 2009 and again on July 2, 2009, Dr. Tracy's examination findings were largely normal, and "contradict any assertion of disability." (R. at 1553). The ALJ also pointed to the findings of Paul Biddle, M.D., who examined Plaintiff at Dr. Rahman's request for a consultation. (R. at 1554). On January 20, 2010, Dr. Biddle found Plaintiff in no acute distress with 5/5 motor strength bilaterally throughout and a normal gait. (R. at 1689-92).

41. Dr. Rahman's findings are also inconsistent with Dr. Rosch's medical expert opinion that Plaintiff's COPD, which had persisted since 2003, "significantly worsened

around 2012." (R. at 1943-44). Dr. Rosch testified that this deterioration in Plaintiff's condition, together with Plaintiff's morbid obesity, caused Plaintiff to become disabled "as of the "internal medicine examination of July 30, 2012." (R. at 1948). Accordingly, the Commissioner found Plaintiff to be under a disability as of three months prior to that examination, with an established onset date of April 1, 2012. (R. at 1557, 1510).

42. Because Dr. Rahman's assessments are not supported by objective evidence, nor are they clearly explained by narrative or consistent with other credible medical opinions of record, the ALJ did not err in granting little weight to Dr. Rahman's opinions.

43. Finally, Plaintiff argues the ALJ erred in failing to evaluate Plaintiff's hand limitations. (Docket No. 12 at 28). Plaintiff testified that she has problems with her hands and that her fingers "lock" so that she "can't move them." (R. at 1964). Plaintiff also testified that she "was having problems before 2010, but it wasn't bad." Id. The record does not support a finding of limitations on Plaintiff's use of her hands, however.

44. In 2007, Dr. Bernstein noted "it seems as though there is Raynaud's phenomena in both hands" (R. at 1297), however no restrictions were assessed at that time, nor did any other credited medical opinion find Plaintiff to have such limitations. In fact, on July 30, 2012 Nikita Dave, M.D. evaluated fine motor activity of Plaintiff's hands and found dexterity intact, full grip strength bilaterally, and that Plaintiff was able to zipper, button, and tie bilaterally. (R. at 1891).

45. Because the record does not demonstrate Plaintiff experienced a loss of dexterity or other use of her hands, the ALJ did not err in failing to include such limitations in the RFC.

13

46. For the foregoing reasons, this Court finds that the ALJ's decision that Plaintiff was not under a disability prior to April 1, 2012, but that she became disabled on that date is supported by substantial evidence. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 20) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   June 28, 2019
         Buffalo, New York

                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge